FILED
United States Court of Appeals
Tenth Circuit

February 13, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

RICHARD J. HALL,

    Defendant - Appellant.

No. 18-2022
(D.C. No. 1:17-CR-01099-MCA-1)
(D.N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **KELLY**, and **MORITZ**, Circuit Judges.
_____

Richard Hall challenges the district court's decision to impose a three-level

enhancement under § 2B3.1(b)(2)(E) of the United States Sentencing Guidelines (the

Guidelines) for possessing or brandishing a dangerous weapon during a robbery. For

the reasons explained below, we affirm.

**Background**

Hall robbed a Wells Fargo bank in Albuquerque, New Mexico. The security

video of the robbery shows Hall waiting in line, approaching a teller, rummaging

through his pockets, and giving the teller a note. The note, which the teller returned

---

[*] This order and judgment isn't binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. But it may be cited for its
persuasive value. _See_ Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

to Hall, said "something to the effect of 'give me the money and no one will get hurt.'" R. vol. 2, 5. The teller reported to law enforcement that after Hall gave him the note, Hall reached down toward his waistband, raised the bottom of his shirt with one hand, and grabbed what appeared to be a black handgun. Although Hall's waistband can't be seen in the video, the video corroborates part of the teller's statement: it shows Hall giving the teller the note and then immediately moving his hand down to his waistband.

The teller gave Hall $2,456 in cash, and Hall walked out of the bank. Law enforcement identified and arrested Hall about a week later. Hall admitted to robbing the bank but told law enforcement that he didn't use a gun. The government charged Hall with bank robbery under 18 U.S.C. § 2113(a). Hall pleaded guilty.

In the presentence report (PSR), the probation officer recommended a three-level enhancement under § 2B3.1(b)(2)(E) because Hall created the impression that he possessed a dangerous weapon during the robbery. Hall objected to the enhancement. He argued that an objective review of the circumstances showed that he only reached toward his waistband to pull his pants up, not to create the impression that he had a weapon. At the sentencing hearing, the district court found that the video, the teller's statement as recounted in the PSR, and the threatening note sufficiently supported imposing the enhancement. The district court sentenced Hall to 63 months in prison (the low end of the Guidelines range) and three years of supervised release. Hall appeals, challenging the three-level enhancement.

2

**Analysis**

We review de novo "the district court's legal interpretation and application of the [G]uidelines." *United States v. Farrow*, 277 F.3d 1260, 1262 (10th Cir. 2002) (quoting *United States v. Henry*, 164 F.3d 1304, 1310 (10th Cir. 1999)). We likewise review de novo whether "the facts found by the district court are insufficient as a matter of law to warrant an enhancement." *United States v. Martinez*, 602 F.3d 1156, 1158 (10th Cir. 2010) (quoting *United States v. Hamilton*, 587 F.3d 1199, 1222 (10th Cir. 2009)).

The § 2B3.1(b)(2)(E) enhancement increases the base offense level by three "if a dangerous weapon was brandished or possessed" during the robbery. But the enhancement applies in circumstances beyond those involving the use or possession of an actual weapon. In particular, the commentary to the enhancement provides that "an object shall be considered to be a dangerous weapon for purposes of subsection (b)(2)(E) if . . . the defendant used the object in a manner that created the impression that the object was an instrument capable of inflicting death or serious bodily injury." § 2B3.1 cmt. n.2.

On appeal, Hall first faults the district court for failing to specify which "object" he used to create the impression of a dangerous weapon. *Id.*; *see also Farrow*, 277 F.3d at 1266 (noting that "the commentary to [§ 2B3.1(b)(2)(E)] necessarily requires some 'object' to support a finding of possession of a dangerous weapon" (quoting § 2B3.1 cmt. n.2)). But Hall didn't make this objection below. Instead, in district court, Hall stated his "specific objection" was that under "an

3

objective, reasonable view of what happened," Hall never "created the impression that he possessed a dangerous weapon." R. vol. 2, 4. In other words, Hall argued below that based on the video and the totality of the circumstances, the teller's impression—that Hall had a gun—wasn't reasonable. And the district court's ruling reflects the argument that Hall presented: the district court concluded "that the video, when combined with the other evidence, including the victim's statement, is sufficient to support the enhancement." *Id.* at 12. Because Hall didn't argue about the absence of an "object"—in fact, the noun "object" doesn't appear in Hall's written objection below, and he never said that word during the sentencing hearing—the district court made no finding on that subject.

The lack of such a finding isn't surprising. Indeed, "[o]ur precedent is clear that an objection must be 'definite' enough to indicate to the district court 'the precise ground' for a party's complaint." *United States v. Winder*, 557 F.3d 1129, 1136 (10th Cir. 2009) (quoting *Neu v. Grant*, 548 F.2d 281, 287 (10th Cir. 1977)). Here, Hall's general objection to this enhancement failed to alert the district court to his specific complaint on appeal, thereby "depriv[ing the district court] of the opportunity to correct its action in the first instance." *Id.* And to the extent that Hall intended to advance an objection below to the lack of any finding regarding the specific "object" the district court concluded he possessed, he did nothing to clarify that objection when the district court gave him the opportunity to do so. Indeed, after the district court denied Hall's general objection without identifying the relevant "object," it asked Hall's counsel, "Do you wish to note an objection to the court's

4

ruling?" R. vol. 2, 12. Hall's counsel responded, "Well, we would object to that ruling, Your Honor. *I don't need to elaborate any further*." *Id.* (emphasis added). So, even when given the opportunity to clarify his objection, Hall declined to do so. Instead, by stating there was no "need to elaborate," Hall implicitly signaled to the district court that it had understood and addressed Hall's argument below. *Id.*; *see also United States v. Uscanga-Mora*, 562 F.3d 1289, 1294 (10th Cir. 2009) (finding that defendant forfeited specific challenge to sentencing enhancement that he failed to advance below—even after "district court judge paused at the end of his discussion of the sentencing enhancement and gave both parties the opportunity to raise any additional concerns," thereby providing defendant with "opportunity to raise any as-yet unvoiced objection to the court's statement of reasons for granting the enhancement").

Accordingly, to the extent Hall now asserts that the district court erred by failing to make a finding about which "object" he used, he forfeited this argument by failing to raise it below. *See United States v. Zubia-Torres*, 550 F.3d 1202, 1205 (10th Cir. 2008). What's more, he has waived it on appeal by failing to argue for plain error. *See United States v. Kearn*, 863 F.3d 1299, 1313 (10th Cir. 2017) ("[T]he failure to argue for plain error and its application on appeal . . . marks the end of the road for an argument for reversal not first presented to the district court." (quoting *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011))). As such, we decline to consider this argument.

We now move on to Hall's two properly preserved arguments. First, he contends that the district court applied an incorrect legal standard when it imposed the enhancement under § 2B3.1(b)(2)(E). The standard for applying this enhancement is an objective one: the sentencing court inquires "whether a reasonable person, under the circumstances of the robbery, would have regarded the object that the defendant brandished, displayed[,] or possessed as a dangerous weapon." *Farrow*, 277 F.3d at 1268 (quoting *United States v. Hart*, 226 F.3d 602, 607 (7th Cir. 2000)). Under this objective standard, a victim's subjective impression is "relevant" but "is never controlling of the outcome." *Id.* (quoting *Hart*, 226 F.3d at 607). Instead, "[c]ourts must examine the totality of the evidence, including words spoken and the surrounding context, to determine whether it was reasonable for the victim to think that the defendant was wielding a weapon." *United States v. Maxwell*, 90 F. App'x 305, 307 (10th Cir. 2004) (unpublished); *see also Farrow*, 277 F.3d at 1268 (applying enhancement based on combination of bank teller's observations and defendant's threatening actions).

Here, Hall argues that the district court incorrectly applied a subjective standard by relying solely on the teller's impressions. In support, he points out that the district court failed to specify that it was applying an objective standard, relied on the teller's impression that Hall had a gun in his waistband, and didn't explicitly find that the teller's impression was reasonable. But the district court's failure to use the words "objective" or "reasonable" doesn't mean that the district court applied a subjective standard. First, we presume that the district court knows and follows the

6

law. *See United States v. Ruiz-Terrazas*, 477 F.3d 1196, 1201 (10th Cir. 2007). Moreover, as the government points out, both parties presented the district court with the correct standard in their filings and at the sentencing hearing.[1] So the absence of an explicit recital of the objective standard doesn't convince us that the district court failed to apply that standard.

Nor are we convinced that the district court relied solely on the teller's subjective impressions. Instead, it considered those subjective impressions along with more objective evidence, including the video of the robbery. *See Farrow*, 277 F.3d at 1268. And although the district court didn't expressly state that the teller's subjective impressions were reasonable, such a conclusion is implicit in the statement that "the video, when combined with the other evidence, including the victim's statement, is sufficient to support the enhancement." R. vol. 2, 12. Further, "the other evidence" also includes the undisputedly threatening note, which further corroborates the teller's belief that Hall had a weapon by implying that Hall had the capacity to "hurt" people if the teller failed to comply with his demands. *Id.* at 5, 12. Thus, we reject Hall's argument that the district court applied an incorrect subjective standard.

Second, Hall suggests that even if the district court applied the correct objective standard, it erred in concluding that the evidence was legally sufficient to

---

[1] The record belies Hall's argument that the government "effectively argu[ed] for application of a subjective standard" at the sentencing hearing. Aplt. Br. 12. The government did focus on the teller's impressions. But it also presented the district court with the correct law on the objective standard. Moreover, after the government's argument, Hall's counsel again cited the objective standard, thereby providing the district court with the correct governing law.

satisfy that standard. Specifically, Hall asserts that the factors the district court relied on—including the teller's impression that Hall had a gun, the video corroborating some of what the teller reported and showing Hall reaching toward his waistband, and Hall's threatening note—are legally insufficient to warrant the enhancement. In support, Hall contends that the district court lacked adequate contextual information to credit the teller's report of a weapon. But that's just not the case; the video corroborated the teller's report and provided sufficient context. Hall also points out that the video shows the robbery occurred peacefully and without other bank customers becoming aware of it. That may be, but it doesn't negate the other evidence supporting the reasonableness of the teller's impression that Hall had a gun: the threatening note and the security footage showing Hall reaching for his waistband.

Indeed, the facts of this case are very similar to the facts in *United States v. Abbott*, 69 F. App'x 936 (10th Cir. 2003) (unpublished).[2] There, the bank teller reported that the "defendant appeared to have his hand on an object with a black handle." *Abbott*, 69 F. App'x at 937. Here, the teller reported that Hall put his hand on what the teller believed was a black handgun at Hall's waistline. There, like here, security footage corroborated the teller's report by showing the defendant moving his

---

[2] Although unpublished cases lack precedential value, we may rely on them if they "ha[ve] persuasive value with respect to a material issue in a case and would assist the court in its disposition." *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005); *see also* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but [they] may be cited for their persuasive value."). We find *Abbott* persuasive in these circumstances.

hands in the way the teller described—and in a way that indicated he might have a weapon. *See id.* And there, like here, the defendant presented a note that didn't expressly mention a weapon but was nevertheless threatening. *See id.* We found this record sufficient to impose the enhancement, despite the defendant's argument that "it [wa]s undisputed that he did not possess a 'firearm' during the robbery." *Id.* at 937–38. And in *United States v. Bates*, the Eleventh Circuit reached the same conclusion based on similar facts. *See* 213 F.3d 1336, 1338–39 (11th Cir. 2000) (affirming enhancement where defendant threatened to hurt teller and then reached toward his waistband and "simulated possession of what appeared to be a dangerous weapon"). We reach the same conclusion in this case.[3]

## Conclusion

We decline to consider Hall's forfeited and waived argument that the district court erred in failing to make a finding about which "object" supported the

---

[3] The dissent would find the evidence insufficient to support the enhancement based primarily on the absence of *testimony* from the teller. In particular, the dissent concludes that because Hall objected to the enhancement, the district court couldn't rely on the teller's statement as recounted in the PSR. But Hall never voiced such an objection below. On the contrary, he told the district court that the teller's "subjective view [was] *certainly something that the court* [*could*] *consider*." R. vol. 2, 9–10 (emphasis added). In other words, Hall clearly assumed that the teller's statement— although recounted in the PSR and not presented as testimony at the sentencing hearing—was evidence that the district court could consider. As such, Hall forfeited any argument based on the absence of the teller's testimony by failing to raise it below. *See United States v. Jarvis*, 499 F.3d 1196, 1201 (10th Cir. 2007) (noting "that issues not presented below are forfeited on appeal"). Additionally, we question whether Hall in fact raised this argument on appeal. And even assuming he did, he fails to argue for plain error. Accordingly, we treat this argument as waived and decline to consider it. *See Kearn*, 863 F.3d at 1313.

enhancement. And because the district court applied the correct legal standard and the evidence was legally sufficient to satisfy that standard, we affirm.

Entered for the Court


Nancy L. Moritz
Circuit Judge

No. 18-2022, *United States v. Hall*
**BRISCOE**, Circuit Judge, dissenting.

I respectfully dissent.  In my view, the government failed to meet its burden of proving that "a dangerous weapon was brandished or possessed" by Hall.  U.S.S.G. § 2B3.1(b)(2)(E).  Consequently, I would reverse the judgment of the district court and remand for resentencing.

I

Hall, as noted by the majority, pleaded guilty to a single count of robbing a Wells Fargo bank in Albuquerque, New Mexico, in violation of 18 U.S.C. § 2113.

Following Hall's guilty plea, the probation office prepared a presentence investigation report (PSR) and submitted it to the district court and the parties.  In describing the offense conduct, the PSR stated, in pertinent part:

> In summary, the defendant robbed a bank by passing the teller a note stating "keep calm, give me the money and no one gets hurt."  The defendant then raised his shirt and grabbed what the teller perceived to be a handgun.  The defendant partially drew the object and then placed it back into his waistband, creating the impression the object was a dangerous weapon.  The teller felt threatened and handed the defendant took [sic] $2,456 dollars.

Supp. ROA, Vol. 1 at 4.  The PSR, in turn, based upon that factual description of the offense, applied a base offense level of 20 pursuant to U.S.S.G. § 2B3.1(a), a two-level increase pursuant to U.S.S.G. § 2B3.1(b)(1) because "the property of a financial institution . . . was taken," and a three-level increase pursuant to U.S.S.G. § 2B3.1(b)(2)(E) because "[t]he defendant created the impression he possessed a

dangerous weapon." Id. at 5. After decreasing the offense level by three levels for acceptance of responsibility, the PSR arrived at a total offense level of 22. That total offense level, when combined with Hall's criminal history category of IV, resulted in an advisory Guidelines imprisonment range of 63 to 78 months.[1]

Hall objected to the PSR's description of the offense and, in turn, its proposed § 2B3.1(b)(2)(E) enhancement. To begin with, Hall denied that he ever raised his shirt with one hand, grabbed what appeared to be a handgun, or partially drew the weapon before putting it back in place. ROA, Vol. 1 at 7. Hall also disputed possessing any weapon. Id. at 7–8. Hall in turn argued that he "did not create the impression that he possessed a dangerous weapon" and "did not make any movements which would lead a reasonable person to believe he possessed a firearm." Id. at 8. Hall acknowledged that the bank had provided law enforcement officials with a video taken by a surveillance camera inside the bank lobby, but he asserted that the video "d[id] not support the three-level enhancement." Id.

The probation officer responded to Hall's objection by stating, in pertinent part:

> The video was reviewed several times. In the video, the defendant is seen walking up to the teller and producing a robbery note. The note stated, "keep calm and give me the money and no one gets hurt." In the video, after the defendant puts the note on the counter, his hands go below the view of the camera. There is a brief moment in the video where it does appear the defendant lifted his shirt with his right hand and has his hand placed near his stomach area. Unfortunately, the video does not clearly show what the defendant is doing with his hand. From the video, it is unclear if there is anything in the defendant's waistband. However, the victim reported he saw the defendant lift his shirt and grab what appeared

---

[1] Without the § 2B3.1(b)(2)(E) enhancement, the advisory Guidelines imprisonment range would have been 46 to 57 months.

2

to be a firearm. The video appears to corroborate at least part of the victim's story. The defendant's action, combined with the note, would lead a reasonable person to believe the defendant had a weapon in his possession. It appears the three level enhancement is appropriately applied.

Supp. ROA, Vol. 1 at 22.

At the sentencing hearing, defense counsel again objected to the proposed § 2B3.1(b)(2)(E) enhancement, arguing that "there [was] not a firearm or any other weapon secreted on . . . Hall's body" and "also that it [wa]s not [Hall's] intention to give the impression that he [wa]s so armed with either a knife or any other sort of dangerous weapon or handgun." ROA, Vol. 2 at 6.

Government counsel responded by asserting that the "victim teller," who "had been working at the bank for approximately 10 months," had "the perspective" that Hall "ha[d] something with which he may hurt" the teller "or other individuals" and "was [thus] placed in fear." Id. at 8–9. Government counsel stated that the teller "shared that perspective with the [investigating law enforcement] agent at the time he was interviewed." Id. at 9. Government counsel further asserted that "the defendant's motion towards his pants where firearms are typically placed during . . . armed bank robberies" was "visible" in the bank's surveillance video. Id. at 9. Government counsel conceded that the surveillance video—which was comprised solely of a series of still photographs—was "kind of halting." Id. But government counsel argued that, "from the perspective of the teller, it was realtime, and in that realtime, he perceived this defendant to have a firearm[, a]nd he described it as a black semiautomatic handgun." Id.

3

Defense counsel responded to government's counsel's argument by emphasizing that, under Tenth Circuit case law, a teller's subjective state of mind is "'never controlling of the outcome'" and that, instead, "the standard overall is an objective one."[2] Id. at 9–10 (quoting United States v. Farrow, 227 F.3d 1260, 1268 (10th Cir. 2002)). Defense counsel in turn argued, after discussing the deficiencies in the surveillance video, that "there is an objective standard, and I think looking at it objectively, I don't think that the government has met their burden to support the application of that three-point enhancement." Id. at 10.

In ruling on the objection, the district court stated that it was "undisputed that the defendant did not brandish or possess an actual weapon." Id. at 11. The district court in turn noted that the "probation officer [proposed] this enhancement based on" a "statement

---

[2] The majority suggests that defense counsel's statement amounted to a concession "that the teller's statement . . . was evidence that the district court could consider." O&J at 9 n.3. That interpretation, however, clearly takes defense counsel's statement out of context. As discussed above, the sole point of defense counsel's statement was that Tenth Circuit law requires a district court to take an objective view of the evidence before it. In my view, the statement was not intended as any type of concession that it was proper for the district court to treat as evidence the PSR's summary description of the victim's statement to a law enforcement agent.

The majority in turn concludes that "Hall forfeited any argument based on the absence of the teller's testimony by failing to raise it below." Id. And, lastly, the majority concludes that Hall "waived" the issue on appeal by "fail[ing] to argue for plain error" review. Id. In my view, this is patently unfair. Rather than acknowledging that government counsel erred by failing to present the victim teller as a witness at the sentencing hearing, the majority wrongly takes defense counsel to task and effectively creates an issue of ineffective assistance of defense counsel.

The proper course, in my view, is to recognize and correct the sentencing error that occurred in this case, rather than effectively forcing Hall to seek relief for that error in a § 2255 postconviction proceeding.

4

of the victim who reported that he saw defendant lift his shirt and grab what appeared to be a firearm and the robbery note which state[d] 'keep calm and give me the money and no one gets hurt.'" Id. at 11–12. The district court concluded that "the video was not dispositive or clear on this issue." Id. at 12. But the district court concluded "that the video, when combined with the other evidence, including the victim's statement, [wa]s sufficient to support the enhancement." Id. The district court therefore denied the objection, adopted the PSR's sentencing calculations, and sentenced Hall to a term of imprisonment of 63 months, a sentence at the very bottom of the advisory Guidelines sentencing range.

II

Section 2B3.1 of the United States Sentencing Guidelines applies to robbery offenses. Subsection (a) thereof directs that a base offense level of 20 shall apply to all such offenses. Subsection (b), in turn, requires the application of specific increases that are based on the specific offense characteristics. Of relevance here is subsection (b)(2)(E), which states that "if a dangerous weapon was brandished or possessed, increase by 3 levels." U.S.S.G. § 2B3.1(b)(2)(E). Application Note 2 to § 2B3.1 states:

> Consistent with Application Note 1(E)(ii) of § 1B1.1 (Application Instructions), an object shall be considered to be a dangerous weapon for purposes of subsection (b)(2)(E) if (A) the object closely resembles an instrument capable of inflicting death or serious bodily injury; or (B) the defendant used the object in a manner that created the impression that the object was an instrument capable of inflicting death or serious bodily injury (e.g., a defendant wrapped a hand in a towel during a bank robbery to create the appearance of a gun).

Id. § 2B3.1 cmt n.2.

5

Application Note 1(E)(ii) of U.S.S.G. § 1B1.1 states that the term "dangerous weapon" includes

> an object that is not an instrument capable of inflicting death or serious bodily injury but (I) closely resembles such an instrument; or (II) the defendant used the object in a manner that created the impression that the object was such an instrument (e.g., a defendant wrapped a hand in a towel during a bank robbery to create the appearance of a gun).

Id. cmt n.1(E)(ii).

### III

Federal Rule of Criminal Procedure 32(i)(3) provides that "[a]t sentencing," a district court "may accept any undisputed portion of the [PSR] as a finding of fact," but "must—for any disputed portion of the [PSR] or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(A)–(B). In this case, Hall disputed the PSR's description of the offense conduct and its related proposal to apply a three-level enhancement pursuant to § 2B3.1(b)(2)(E). Consequently, the district court was not allowed to accept the PSR's description of the offense conduct as its finding of fact, and instead was obligated to rule on Hall's objection and make relevant findings regarding the offense conduct. Further, it was the government's burden to prove the facts necessary to support the PSR's proposed enhancement under § 2B3.1(b)(2)(E). See United States v. Villanueva, 821 F.3d 1226, 1239 (10th Cir. 2016) ("The government carries the burden of proving by a preponderance of the evidence that an enhancement is appropriate." (quotations omitted)); United States v. Harrison, 743 F.3d 760, 763 (10th Cir. 2014) ("When a

6

defendant objects to a fact in a presentence report, the government must prove that fact at a sentencing hearing by a preponderance of the evidence." (quotations omitted)).

Hall argues, and I agree, that the government failed to meet its burden of proof on the § 2B3.1(b)(2)(E) enhancement. By challenging the PSR's statement that he possessed and brandished an object that looked like a firearm, Hall placed that fact at issue and effectively imposed on the government the burden of proving that fact at the sentencing hearing by a preponderance of the evidence. At the sentencing hearing, however, the government presented no witness testimony and, instead, simply pointed the district court to the surveillance video and the PSR's summary of the victim teller's statement to a law enforcement agent.[3] Although the surveillance video was admitted as an exhibit at the sentencing hearing, it did not establish, and indeed could not have established, that Hall possessed and brandished an item that looked like a firearm. That is because the surveillance camera was positioned in a manner that the teller counter blocked the view of Hall's body from the stomach down. Consequently, the still photos contained in the video do not establish what, if anything, Hall did with his hands during the robbery and whether or not, as alleged by the victim teller, he reached into his waistband and grasped an item. As for the victim's purported statement to a law enforcement agent, the record on appeal contains no copy of any such statement (and no indication that any such statement was admitted at the sentencing hearing), and thus we

_____

[3] Nothing in the record indicates that the probation officer spoke with anyone with first-hand knowledge of the crime, including the victim teller. Nor is there any indication in the record that any written or videotaped statement from the teller to a law enforcement agent was introduced as evidence at the sentencing hearing.

have no idea when the statement was made, to whom it was made, whether it was recorded in any manner, and what the teller actually said during the interview. In short, it amounted to no evidence at all. Thus, the only actual evidence presented by the government at the sentencing hearing—the surveillance video—was insufficient to satisfy the government's burden of proof. This is particularly true in this case where the government's proof in support of the enhancement rested upon the perception of a witness (the victim teller) who was not called to testify.

The majority in this case, in concluding that the evidence presented at the sentencing hearing was sufficient to satisfy the government's burden of proof, states that "the facts of this case are very similar to the facts in United States v. Abbott, 69 F. App'x 936 (10th Cir. 2003) (unpublished)." O&J at 8. Although the facts of the two crimes might be similar, there is one important procedural distinction. In Abbott, the bank teller who was presented with the robbery note testified at the sentencing hearing. 69 F. App'x at 937 ("At sentencing, the bank teller testified that defendant appeared to have his hand on an object with a black handle . . . ."). In Hall's case, in contrast, the government presented no witnesses. Because Hall timely objected to the PSR and its description of the crime, it was the government's duty to present evidence—including testimony from the victim teller—to support the § 2B3.1(b)(2)(E) enhancement. Unfortunately, the government failed to do so.

For these reasons, I vote to reverse the judgment of the district court and remand for resentencing.