UNITED STATES of America,
Plaintiff–Appellee,

v.

Phillip Reed WOODARD,
Defendant–Appellant.

No. 93–6326.

United States Court of Appeals,
Sixth Circuit.

Submitted April 25, 1994.

Decided May 25, 1994.

Darryl Stewart, Asst. U.S. Atty., Nashville, TN (briefed), for plaintiff-appellee.

Thomas W. Watson, Asst. Federal Public Defender, Nashville, TN (briefed), for defendant-appellant.

Before: KENNEDY and BATCHELDER, Circuit Judges; and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Defendant-appellant, Phillip Reed Woodard, appeals his sentence following a guilty plea to armed bank robbery.

I.

On April 7, 1993, a federal grand jury for the Middle District of Tennessee returned a one-count indictment against defendant, charging that on or about March 17, 1993, he took by force and violence and intimidation from the person and presence of employees of Dominion Bank, Nashville, Tennessee, approximately $1095.00.

On March 17, 1993, defendant entered the FDIC-insured Dominion Bank (hereinafter "the bank"). Defendant approached a bank teller and while pointing what appeared to be a silver revolver at her, presented her with a piece of paper with some writing on it. Defendant told the teller, Ms. Morrow, to hurry up, and in response she gave him $1095.00, which included a dye pack and five twenty-dollar bills of pre-recorded bait money.

After defendant left the bank and entered a car, the dye pack exploded, a witness noticed red smoke coming out of the side of the car, and then reported its description and license number to the police. The police then spotted defendant's car and pursued him. The pursuit ended when defendant lost control of his car and struck a tree. At the time of his arrest defendant had red dye-stained money in the pockets of his clothing. Inside his car in plain view were red dye-

stained money, the exploded dye pack, and a silver toy revolver.

After his arrest and after being advised of his constitutional rights, defendant confessed to robbing the bank and entered a guilty plea on June 7, 1993.

A presentence report was prepared. A review of the investigation into the robbery revealed that the victim teller, Ms. Morrow, told the FBI that the silver revolver, which defendant had pointed at her, could have been a toy. Furthermore, Ms. Edwards, another bank teller who observed the robbery, told law enforcement authorities that the silver revolver, which the defendant had used, appeared to be a toy, but she was not certain.

At the sentencing hearing on September 17, 1993, based on these statements and a photograph of the silver revolver which was taken at the time of defendant's arrest, the district court determined that defendant had committed the robbery while brandishing, displaying or possessing a dangerous weapon. Therefore, the court increased defendant's sentencing guideline base offense level by three points, pursuant to U.S.S.G. § 2B3.1(b)(2)(E). Defendant objected to the district court's determination that a three-level enhancement for brandishing a dangerous weapon was appropriate because the tellers' perception of the gun at the time of the robbery was such that the tellers believed it "could have been a toy" or "appeared to be a toy." Defendant timely filed this appeal.

## II.

Defendant contends that the district court erred in determining that his sentence should be increased by three levels for brandishing, displaying, or possessing a dangerous weapon pursuant to U.S.S.G. § 2B3.1(b)(2)(E). Under this guideline, a defendant who commits bank robbery may have his sentence enhanced by three levels if he uses a dangerous weapon. Specifically, the guideline states that the base offense level for robbery shall be increased by three if during its commission "a dangerous weapon was brandished, displayed, or possessed." Under U.S.S.G. § 1B1.1, application note 1(d), a dangerous weapon is defined as follows:

"Dangerous weapon" means an instrument capable of inflicting death or serious bodily injury. Where an object that appeared to be a dangerous weapon was brandished, displayed, or possessed, treat the object as a dangerous weapon.

■ Defendant argues that in the present case the toy gun did not appear to be a dangerous weapon, and, therefore, it was erroneous to apply U.S.S.G. § 2B3.1(b)(2)(E). Defendant argues that because the tellers stated that they believed the weapon could have been a toy, it was evident that the object did not appear to be a dangerous weapon as required for the enhancement. Defendant relies on *United States v. Perry,* 991 F.2d 304 (6th Cir.1993), in which this court held that a defendant could not be convicted of armed bank robbery if the toy gun was not seen by the victim. Defendant also relies on *United States v. Crouthers,* 669 F.2d 635 (10th Cir.1982), in which the court stated that a conviction for armed bank robbery required that the victim of the robbery perceive the gun to be a dangerous weapon even though it was in fact unloaded. Defendant argues that in the present case all of the evidence indicates that the tellers did not believe that the toy was a real gun.

The government, on the other hand, argues that defendant possessed an object which appeared in shape and style to be a silver revolver, a firearm. The government argues that the tellers, who were victimized by and witnessed the robbery, were equivocal about whether or not they believed the revolver was a toy. The government argues that the fact that the tellers immediately handed over the money indicated that they believed the gun looked as if it were, perhaps, a dangerous weapon; they just were not sure. Moreover, the district court determined from a photograph of the gun that it looked realistic. Under these circumstances, the United States submits that the district court properly increased defendant's offense level by three due to his possession of a dangerous weapon during the robbery.

We agree. In *United States v. Medved,* 905 F.2d 935 (6th Cir.1990), *cert. denied,* 498 U.S. 1101, 111 S.Ct. 997, 112 L.Ed.2d 1080 (1991), this court held that a toy, which

looked like a real gun, could be a dangerous weapon or device and its use could put people's lives in jeopardy. *Id.* at 940. The court explained that a robber who carries a toy gun during the commission of a bank robbery creates some of the same risks as those created by one who carries an unloaded or inoperable genuine gun. *Id.* In the present case, after viewing a photograph of the gun, the district court determined that the gun could be perceived as a dangerous weapon which would put people's lives in jeopardy. We must accept this finding of the district court unless it is clearly erroneous, 18 U.S.C. § 3742(e), and it is not clearly erroneous.

■ Defendant further argues that the government has failed to meet its burden of proof to establish that the weapon was perceived to be a dangerous weapon by a preponderance of the evidence as required by *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). However, defendant errs in arguing that the perception to examine is necessarily the actual perception of the tellers. As this court stated in *Medved:*

> "A robber who carries a toy gun during the commission of a bank robbery creates some of the same risks as those created by one who carries an unloaded or inoperable genuine gun. First, the robber subjects victims to greater apprehension. Second, the robber requires law enforcement agencies to formulate a more deliberate, and less efficient response in light of the need to counter the apparent direct and immediate threat to human life. Third, the robber creates a likelihood that the reasonable response of police and guards will include the use of deadly force. The increased chance of an armed response creates a greater risk to the physical security of victims, bystanders, and even the perpetrators. Therefore the greater harm that a robber creates by deciding to carry a toy gun is similar to the harm that he creates by deciding to carry an unloaded gun." [*United States v.*] *Martinez–Jimenez,* 864 F.2d [664] at 666–67 [ (9th Cir.1989) ].

905 F.2d at 940. Based on the court's reasoning in *Medved,* we believe that the standard called for is not the subjective state of mind of the victim teller, but an objective standard. The district court in the present case concluded that the brandishing of the toy gun resulted in a greater risk of harm based on a photograph of the gun. We agree with this conclusion. Even if the tellers were close enough to recognize that the gun was a toy gun, a police officer, for example, who was stationed in the bank, would be far enough away to perceive the toy silver revolver as a dangerous weapon that could engender a violent response. The brandishing of the toy gun thus would increase the risk of harm. *Id.; See also United States v. Burnett,* 16 F.3d 358 (9th Cir.1994) (Guidelines treat items that appear to be dangerous weapons as dangerous weapons). We note, moreover, that because of its appearance, both tellers, Ms. Morrow and Ms. Edwards, indicated uncertainty about whether it was a toy gun or a real gun.

For these reasons, the judgment of the district court is hereby AFFIRMED.