In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3846

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

EMMANUEL HART,

Defendant-Appellant.


Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 CR 474--Harry D. Leinenweber, Judge.


Argued March 31, 2000--Decided August 21, 2000




   Before POSNER, RIPPLE and ROVNER, Circuit Judges.

   RIPPLE, Circuit Judge.  In this case, we must
decide whether the display of bags and shoe boxes
during a bank robbery, when accompanied by the
express threat that they contain a bomb,
constitutes the brandishing, displaying or
possessing of a dangerous weapon within the
meaning of U.S.S.G. sec. 2B3.1(b)(2)(E). The
district court applied the enhancement on the
facts presented by this case. For the reasons set
forth in the following opinion, we affirm the
judgment of the district court.


I
BACKGROUND

   Within a sixteen day period in 1998, Emmanuel
Hart robbed three banks in Chicago, Illinois. On
June 8, 1998, Mr. Hart entered Mid City National
Bank and approached a bank teller. Mr. Hart then
placed a package wrapped in a brown paper bag on
the counter in front of the teller and gave the
teller a demand note, which stated, "'I have a
bomb in this box[.] There is also two bomb's on
the 5 floor[.] I want the 100.00's 50.00's
20.00['s] now or we all die[.]'" R.32 at 3. After
reading the note, the teller complied with Mr.
Hart's demand by removing the money from his
drawer and placing it on the counter. Mr. Hart

took the money and left the bank.

Ten days later, on June 18, 1998, Mr. Hart entered American National Bank. He carried a white plastic bag containing a grey shoe box. Mr. Hart approached the teller and placed a demand note on the counter. The note stated, "'I have a bomb in this shoe box and will kill every one in this bank[.] [G]ive me the $100.00's $50.00's $20.00's[.]'" R.32 at 3. The teller complied and Mr. Hart took the money and left the bank.

Finally, on June 23, 1998, Mr. Hart entered Midland Federal Savings and Loan Association. He carried a blue nylon lunch box and several plastic bags. Mr. Hart placed the lunch box on the counter in front of the teller and said, "'You have two minutes to put everything in the bag.'" R.32 at 4. Upon providing the teller with a grocery bag, Mr. Hart added, "'Hurry up. Put everything in the bag. Hurry up.'" Id. The teller complied. When a security guard approached him, Mr. Hart warned the guard, "'Don't move. You have two minutes until the bomb goes off.'" Id. Hart then took the bag and fled the bank.

Mr. Hart was subsequently arrested and pleaded guilty to three counts of bank robbery in violation of 18 U.S.C. sec. 2113(a). In the Presentence Investigation Report, the probation officer recommended that Mr. Hart's base offense level be increased three levels pursuant to guideline 2B3.1(b)(2)(E) because he brandished, displayed or possessed a dangerous weapon during the course of the robberies. Mr. Hart objected to this recommendation; he conceded that a two-level enhancement pursuant to sec. 2B3.1(b)(2)(F) would be appropriate because he had made threats to the tellers, but he argued that subsection (E) did not apply because he had not brandished, displayed or possessed a dangerous weapon or an object that could have been perceived as such. Over Mr. Hart's objection, the district court applied the three-level sentencing enhancement pursuant to sec. 2B3.1(b)(2)(E) because, according to the court, the objects Mr. Hart brandished or displayed reasonably could have appeared to be dangerous weapons. Based on this enhancement, Mr. Hart's total offense level was 25. Mr. Hart's criminal history was determined to be 4, and this provided for a sentence range of 84 to 105 months in prison. The court sentenced Mr. Hart to 84 months in prison, followed by three years of supervised release, and ordered him to pay full restitution in the amount of $16,460, as well as a special assessment of $300.

II
DISCUSSION

On appeal, Mr. Hart disputes only the applicability of the sentencing enhancement for brandishing, displaying or possessing a dangerous weapon during the commission of a robbery. See U.S.S.G. sec. 2B3.1(b)(2)(E) & comment. (n.2) (1998).  Mr. Hart contends that the requirement for the dangerous weapon enhancement cannot be satisfied without the presence of an actual weapon or an object that is designed to resemble a weapon, i.e. a toy gun, a replica or a plastic knife. We cannot accept this argument. For the following reasons, we hold that the objects Mr. Hart brandished or displayed reasonably could have appeared to be a dangerous weapon within the meaning of the guideline.

We review a district court's findings of fact in the sentencing context for clear error./1 The district court's application of the Sentencing Guidelines to the facts is also given due deference./2 By contrast, we review de novo questions of law involving the interpretation of a guideline provision./3

Guideline 2B3.1 governs the crime of robbery and provides for a range of enhancements to be imposed by the sentencing court if the defendant's conduct during the course of the robbery created a risk of harm beyond that which is inherent to the offense. See U.S.S.G. sec. 2B3.1, comment. (backg'd.) ("Possession or use of a weapon, physical injury, and unlawful restraint sometimes occur during a robbery. The guideline provides for a range of enhancements where these factors are present."). Essentially, the guideline creates a "hierarchy of culpability" for varying degrees of criminal involvement during the commission of a robbery. See United States v. Wooden, 169 F.3d 674, 675 (11th Cir. 1999). Within this hierarchy, subsection 2B3.1(b)(2)(E) instructs district courts to increase a defendant's base offense level by three levels if a "dangerous weapon was brandished, displayed, or possessed" by the defendant in the course of a robbery. U.S.S.G. sec. 2B3.1(b)(2)(E). According to the Guidelines, a "[d]angerous weapon" is "an instrument capable of inflicting death or serious bodily injury," and is "[b]randished" when it is "pointed or waved about, or displayed in a threatening manner." U.S.S.G. sec. 1B1.1, comment. (n.1(c) & (d)).

Although sec. 2B3.1(b)(2)(E), on its face, refers only to weapons that are dangerous, the commentary in application note 2 directs sentencing courts to impose the three-level enhancement whenever a harmless object that "appeared to be a dangerous weapon" was brandished, displayed or possessed by the

defendant. U.S.S.G. sec. 2B3.1(b)(2)(E), comment. (n.2); see also United States v. Buckley, 192 F.3d 708, 709 (7th Cir. 1999), cert. denied, 120 S. Ct. 2021 (2000); accord United States v. Miller, 206 F.3d 1051, 1052 (11th Cir. 2000) ("Based on the plain language of this commentary, we have recognized that objects which appear to be dangerous weapons should be treated for sentencing purposes as if they actually were dangerous weapons."). "[I]nsofar as dangerous weapons are concerned, appearances count as well as reality. . . ." United States v. Koonce, 991 F.2d 693, 697 (11th Cir. 1993). Simply stated, "the Commission equates the image of a 'dangerous weapon' with its reality for purposes of sentence enhancement" under sec. 2B3.1(b)(2)(E). United States v. Dixon, 982 F.2d 116, 121 (3d Cir. 1992).

We believe that the Commission's rationale for treating a harmless object that "appeared to be a dangerous weapon" as though it were actually a dangerous weapon is clear. As many of our sister courts already have articulated, the risk of a violent response that can flow from brandishing, displaying or possessing a dangerous weapon while perpetrating a robbery is just as real whether the object is an actual weapon or merely an object used by the defendant to create the illusion of a dangerous weapon. See United States v. Souther, No. 99-4582, 2000 WL 992230, at *4-*5 (4th Cir. July 18, 2000); United States v. Bates, 213 F.3d 1336, 1338 (11th Cir. 2000); United States v. Woodard, 24 F.3d 872, 874 (6th Cir. 1994); Dixon, 982 F.2d at 123-24. Regardless of whether the weapon is authentic, the risk that victims or law enforcement officers will respond with violence is heightened, thereby increasing the risk to everyone involved.

Until now, this court has not had the occasion to decide in a published opinion the appropriate standard for determining whether a particular object appeared to be a dangerous weapon within the meaning of sec. 2B3.1(b)(2)(E). The parties here have assumed that an objective standard applies. Mr. Hart argues that the district court erred by applying a subjective standard. To resolve his contention, we must first decide whether an objective standard is proper. The majority of circuits that have addressed this issue directly have held that an objective standard applies. See Woodard, 24 F.3d at 874 (holding that an objective standard is appropriate); Dixon, 982 F.2d at 124 (applying an objective standard); United States v. Taylor, 960 F.2d 115, 116 (9th Cir. 1992) (applying an objective standard); but see Bates, 213 F.3d at 1338-39 (relying on the intent of the perpetrator and the subjective perception of the teller)./4

In Dixon, for example, the Third Circuit concluded that the appearance of an object as a dangerous weapon should be determined from an objective standard. See Dixon, 982 F.2d at 124. In that case, two individuals entered a bank and ordered the tellers to empty the cash drawers. Although neither of the perpetrators were actually armed, one of the perpetrators draped a towel over her hand to create the appearance that she had a gun. She succeeded in creating this appearance; the bank employees testified that they believed a gun was concealed beneath the towel. On appeal, it was argued that, because no object was possessed other than a towel concealing a hand, an object that appeared to be a dangerous weapon could not possibly have been brandished, displayed or possessed. The Third Circuit found this argument unavailing. The court reasoned that "[e]ven though [the perpetrator] did not possess an actual weapon underneath the concealing towel, her actions created a reasonable belief that she had a gun." Id. at 124 (emphasis added).

Like the Third Circuit, the Sixth Circuit has also concluded that the appearance of an object as a dangerous weapon must be determined from an objective standard. See Woodard, 24 F.3d at 874. In Woodard, a man entered a bank and, while pointing what appeared to be a silver revolver at the teller, presented her with a demand note. The investigation into the robbery revealed that the teller had told law enforcement officers that the silver revolver could have been a toy. Furthermore, another bank teller who observed the robbery stated that she also suspected the revolver was a toy, but that she was uncertain. The defendant argued that because the tellers admitted that the "weapon" could have been a toy, it was evident that the object did not appear to be a dangerous weapon as required by sec. 2B3.1(b)(2)(E). The Sixth Circuit disagreed. The court concluded that the appropriate standard for determining whether an object appeared to be a dangerous weapon "is not the subjective state of mind of the victim teller, but an objective standard." Id. The court reasoned that even if the tellers were close enough to recognize that the pistol was not real, a distant police officer or security guard would be far enough away that he might perceive the toy revolver as a dangerous weapon and that this perception could engender a violent or deadly response. See id.

Similarly, in Taylor, the Ninth Circuit applied an objective standard when it decided that a robber who gave the bank teller a note stating that he had a gun and deliberately displayed the outline of a gun under his shirt, possessed what

appeared to be a dangerous weapon. Taylor, 960 F.2d at 116. In that case, a man entered a bank and handed the bank teller a demand note, which read, in relevant part: "This is a hold up. I have a gun in the waistband of my pants." Id. The robber proceeded to raise his shirt, and in the waistband of his pants was what appeared to be a gun. The robber pulled his undershirt tightly so that the teller saw the clear outline of a gun handle. The court held that, because the robber "intentionally created the appearance that he possessed a dangerous weapon, he told his victim he had a gun, and the victim reasonably believed that [he] was armed," the three-level enhancement for brandishing, displaying or possessing a dangerous weapon was justified. Id. (emphasis added).

In accord with the Third, Sixth and Ninth Circuits, we conclude that sentencing courts must employ an objective standard in determining whether a particular object appeared to be a dangerous weapon within the meaning of sec. 2B3.1(b)(2)(E)./5 We believe that the relevant question is whether a reasonable person, under the circumstances of the robbery, would have regarded the object that the defendant brandished, displayed or possessed as a dangerous weapon, "capable of inflicting death or serious bodily injury." U.S.S.G. sec. 1B1.1, comment. (n.1(d)). Although the victim's perception of the object may be relevant to this inquiry, her subjective state of mind is never controlling of the outcome.

On appeal, Mr. Hart argues that the district court erred in its determination that he brandished or displayed a dangerous weapon because the court applied a subjective standard. He bases this argument on the contention that a reasonable person could not mistake a shoe box wrapped inside of a plastic or paper bag for a bomb. Essentially, Mr. Hart's argument is that an object cannot "appear to be" a dangerous weapon under sec. 2B3.1(b)(2)(E), despite his attempt to make it appear so, unless the object itself resembles a dangerous weapon. We cannot accept this argument.

Despite Mr. Hart's contention to the contrary, the district court did not apply a subjective test when it determined that Mr. Hart brandished, displayed or possessed what appeared to be a dangerous weapon. After hearing arguments from both parties on the matter, the court concluded that under the circumstances of the robbery, a person in the teller's position would have believed that Mr. Hart possessed a bomb. Specifically, the court remarked:

[Bank robbers] would not come in with, you know, the stick of dynamite wired to, say, an alarm clock and set it on [the counter]. I mean, they would be more inclined to put it in a box. It seems that this would appear to be--certainly, from the standpoint of the teller, which is, I think, how you are supposed to take this, it would appear to be a dangerous weapon. . . .

What I am saying is you would never expect a person to come in with an actual bomb without it being in something. I think that is the distinguishing feature here; that the person was seeing a box or a lunchbox and was told that it contained an explosive. That person is seeing a bomb.

R.41 at 9, 11. Although the district court did not employ the terms "objective standard" or "reasonable belief," we believe that it is apparent from the court's remarks that it applied an objective standard. When the court stated that the relevant inquiry should be made from the "standpoint of the teller," the court was not referring to the subjective beliefs of the tellers who were robbed by Mr. Hart, but rather to the reasonable person in the teller's position.

  Mr. Hart's brief substantiates this conclusion. Although Mr. Hart contends that the district court erroneously applied a subjective standard, he also criticizes the court for not hearing evidence regarding the perception of any of the tellers who were robbed by Mr. Hart. Mr. Hart argues that the court "should not be permitted to speculate regarding the perceptions of the tellers." Appellant's Br. at 16. If a subjective standard were the correct standard, then Mr. Hart's criticism would be accurate, but we have already determined that the appropriate standard is an objective one. For this reason, the court did not request either party to offer any evidence as to the tellers' subjective beliefs. Put simply, the court was able to assume the perspective of the reasonable teller and render its decision on the basis of the undisputed facts.

  Having determined that the district court applied the correct standard, we now consider whether the three-level enhancement was appropriate based on the facts of this case. Whether a reasonable person, under the circumstances of the robbery, would have believed that the objects Mr. Hart brandished were a bomb is a factual inquiry by the district court to be reviewed under a clear error standard. See Carbaugh, 141 F.3d at 792-93. During each robbery, Mr. Hart placed a package in front of

the teller and warned the bank employee(s) that the package contained a bomb and that death was an imminent possibility. Mr. Hart intended to create the illusion that he possessed a bomb, and, under the circumstances, his threats were credible. The packages that Mr. Hart possessed were certainly capable of holding explosive devices and, of course, the tellers had no way of knowing what they actually contained. Furthermore, there were no "unusual mitigating circumstances that would have deprived [Mr. Hart's statements] of [their] ordinary and intended meaning." Raszkiewicz, 169 F.3d at 468. His words and gestures were calculated to make the tellers believe that a bomb was concealed within the package, and that Mr. Hart would not hesitate to detonate the explosive if his demands were not met. Although it is true that a robber "may be more likely to shoot a gun than to detonate a bomb, because the explosion is apt to injure or kill everyone in the vicinity," it is also true that "willingness to expose oneself to injury may persuade the teller that the robber is a madman, willing to go to any extreme if compliance is not forthcoming." United States v. Bomski, 125 F.3d 1115, 1118 (7th Cir. 1997).

   In light of the Guideline's clear commentary and the precedent in our sister courts, we see no reason why a defendant who brandished an object which reasonably appeared to be, but was not in fact, a dangerous weapon should not receive a three-level enhancement under sec. 2B3.1(b)(2)(E) for brandishing, displaying or possessing a dangerous weapon merely because the object he brandished did not have the intrinsic appearance of a dangerous weapon. It should go without saying that the appearance of dangerousness is determined by viewing the object, not in isolation, but in the context of the offense. When the tellers were warned by Mr. Hart that the packages contained a bomb, they were no longer seeing a lunch box or a shoe box wrapped inside of a paper bag; they were seeing a bomb. Accordingly, the district court's conclusion that Mr. Hart brandished, displayed or possessed an object that appeared to be a dangerous weapon was not in any way clearly erroneous.

Conclusion

   For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

/1 See United States v. Purchess, 107 F.3d 1261,

1265 (7th Cir. 1997); United States v. Hammick, 36 F.3d 594, 597 (7th Cir. 1994); United States v. Atkinson, 979 F.2d 1219, 1222 (7th Cir. 1992).

/2 See United States v. Carbaugh, 141 F.3d 791, 792-93 (7th Cir.), cert. denied, 525 U.S. 977 (1998); Hammick, 36 F.3d at 597; United States v. Johnson, 997 F.2d 248, 255 (7th Cir. 1993).

/3 See Hammick, 36 F.3d at 597; United States v. Rosalez-Carter, 19 F.3d 1210, 1218 (7th Cir. 1994).

/4 In Souther, 2000 WL 992230 at *6, the Fourth Circuit explicitly declined to determine whether the appearance of the object as a dangerous weapon must be determined from an objective or a subjective standard. The court held that a robber's hand resting in his coat pocket may constitute the possession of an object that appeared to be a dangerous weapon. See id. at *2. The court reasoned that, when the robber presented the teller with a note stating that he had a gun and placed his hand in his coat pocket, he created the appearance that he had a gun in his pocket. See id. Notably, the Fourth Circuit made this determination even though the defendant "did not actually possess a weapon or any other inanimate object that might be mistaken for a weapon . . . [or] . . . simulate the presence of a weapon with his hands, fingers, or other object, beyond the simple placement of his hands into his coat pockets." Id. at *1. The court explained that it would uphold the imposition of the enhancement under either an objective or a subjective standard because the teller reasonably believed that the robber possessed a dangerous weapon. See id. at *6.

/5 This conclusion is further supported by related precedent in this circuit. We routinely have applied an objective standard in cases addressing a comparable two-level enhancement under sec. 2B3.1(b)(2)(F). See United States v. Raskiewicz, 169 F.3d 459, 468 (7th Cir. 1999); Carbaugh, 141 F.3d at 794; United States v. Hunn, 24 F.3d 994, 998 (7th Cir. 1994). Subsection (F) requires sentencing courts to impose a two-level enhancement if the defendant made "a threat of death" during the course of a robbery. See U.S.S.G. sec. 2B3.1(b)(2)(F) & comment. (n.6). In Raskiewicz, we held that a menacing gesture, such as pointing an unknown object at the victim, may constitute a threat of death "as long [as] it was one that would put a reasonable person in fear of death in the circumstances and as long as there were no unusual mitigating circumstances that would have deprived the gesture of its ordinary and intended meaning." Raskiewicz, 169 F.3d at 468. Similarly, in Carbaugh, we held that the

statement "'I have a gun,'" without more, may constitute a threat of death and that "the proper focus is on the perspective of the reasonable teller." Carbaugh, 141 F.3d at 794. Likewise, in Hunn, we concluded that sentencing courts "should apply an objective test, what a 'reasonable' victim would read from the robber's conduct." Hunn, 24 F.3d at 998.