*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0300P (6th Cir.)
File Name: 02a0300p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
　　　　*Plaintiff-Appellee,*

　　　*v.*　　　　　　　　　　No. 00-6703

EDUALDO RODRIGUEZ,
　　　　*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 00-00043—Thomas G. Hull, District Judge.

Argued: August 9, 2002

Decided and Filed: September 5, 2002

Before: KEITH, MOORE, and GILMAN, Circuit Judges.

_____

### COUNSEL

**ARGUED:** J. Ronnie Greer, Greeneville, Tennessee, for Appellant. Sarah R. Shults, ASSISTANT UNITED STATES ATTORNEY, Greeneville, Tennessee, for Appellee. **ON BRIEF:** J. Ronnie Greer, Greeneville, Tennessee, for Appellant. Sarah R. Shults, ASSISTANT UNITED STATES ATTORNEY, Greeneville, Tennessee, for Appellee.

1

---

**OPINION**

---

RONALD LEE GILMAN, Circuit Judge.    Edualdo Rodriguez was convicted on one count of bank robbery and sentenced to 95 months in prison.    He now appeals his sentence, arguing that the district court erred in increasing his base offense level pursuant to United States Sentencing Guidelines § 2B3.1(b)(2)(E), a provision that imposes a three-level sentencing enhancement where a defendant possesses a dangerous weapon during a robbery.    For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

On April 21, 2000, Rodriguez entered the Bank of Tennessee branch in Johnson City, Tennessee.    A teller at the bank, Heather Street, watched Rodriguez walk into the bank carrying a styrofoam sandwich box.    Although the box was small, she saw him holding it with both of his hands.    He placed the box on a writing table in the lobby of the bank and approached Street at her teller window.

Rodriguez first told Street that he was interested in opening an investment savings account.    He stepped away from the window shortly thereafter, explaining to Street that he could not open the account until his wife arrived.    As Rodriguez walked away, Street told him not to forget his box and pointed toward the table in the lobby.

Rodriguez returned to Street's window a few minutes later, asking her if she would cash his $5,000 income-tax refund check.    After Street told Rodriguez that she would need to get her supervisor's permission to cash a check in such a large amount, he again stepped away from her window.    When Rodriguez walked up to Street's window for a third time, he handed her a note that read as follows: "I want 5000 in case [sic] I have a gun and a bom [sic] don't do any thing stupid and no alarms or die [sic] packs the bom will go off if there

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

the teller otherwise, the box did not reasonably appear to be a dangerous object therefore lacks merit.

Our conclusion is supported by the Seventh Circuit's decision in *United States v. Hart*, 226 F.3d 602, 607 (7th Cir. 2000), where the court upheld a § 2B3.1(b)(2)(E) enhancement when presented with similar facts. In *Hart*, the defendant robbed multiple banks by claiming in each instance that he was carrying a bomb in a box, including a lunch box on one occasion and a shoe box that was wrapped inside a bag on another. None of the boxes in fact contained an explosive device. *Id*. at 603-04. The defendant in *Hart* argued that his sentence should not have been enhanced under § 2B3.1(b)(2)(E) because no reasonable individual would have believed that he had a bomb. But the Seventh Circuit rejected this argument, reasoning that the "packages that [the defendant] possessed were certainly capable of holding explosive devices and, of course, the tellers had no way of knowing what they actually contained." *Id*. at 608.

Likewise, in the present case, the styrofoam sandwich box that Rodriguez brought into the bank was capable of holding a small explosive device, such as a hand grenade. Rodriguez asserted that he had a bomb and indicated that it was in the box. His claim was plausible, and Street could not by simple observation ascertain its falsity. We therefore conclude that the district court did not err in finding that the box could reasonably be regarded as a dangerous weapon in light of Rodriguez's convincing conduct that caused the bank teller to believe that such was the case.

In sum, a bank robber cannot put on an Oscar-caliber performance with the intention of convincing his audience (the teller) that an opaque package contains a bomb, win the trophy (the ill-gotten cash), and subsequently claim when caught that his act should have instead been panned. The law simply does not tolerate such an opportunistic presentation.

is a die pack!!!" Rodriguez then verbally stated that he had a bomb, and nodded his head toward the styrofoam sandwich box that was still sitting on the writing table in the lobby.

Street gave Rodriguez the money in her cash drawer and triggered the silent alarm. Rodriguez fled the bank, leaving the sandwich box on the desk. After Rodriguez left the bank, Street called "911" and reported both the robbery and Rodriguez's bomb threat. The bank was evacuated. Law enforcement authorities later discovered that the box contained nothing more than a turkey sandwich.

Rodriguez was apprehended shortly after the robbery. He admitted to the police that he had robbed the bank. Because the bank was federally insured, Rodriguez was charged in the United States District Court for the Eastern District of Tennessee with one count of bank robbery, in violation of 18 U.S.C. § 2113(a). He pled guilty to the offense.

The presentence investigation report (PSR) recommended that Rodriguez's base offense level be increased by three points pursuant to United States Sentencing Guidelines § 2B3.1(b)(2)(E). This provision mandates such an enhancement "if a dangerous weapon was brandished or possessed" by the defendant during a robbery. *Id*. To trigger an enhancement under this provision, however, the "dangerous weapon" need only appear to be dangerous. Application Note 2 to § 2B3.1, as set forth in the 1998 U.S. Sentencing Guidelines Manual, specifically provides that "[w]hen an object that *appeared to be* a dangerous weapon was brandished, displayed, or possessed, treat the object as a dangerous weapon for the purpose of subsection (b)(2)(E)." (Emphasis added.) The PSR relied upon Application Note 2 in recommending that Rodriguez receive an enhancement pursuant to § 2B3.1(b)(2)(E).

Rodriguez objected to the PSR's sentencing recommendation. He argued that an enhancement under § 2B3.1(b)(2)(E) was unwarranted because, in his view, no reasonable individual would have concluded that the

styrofoam sandwich box in fact contained a bomb. The district court disagreed, explaining its reasoning as follows:

> Based upon the defendant's written and verbal representations to the bank teller that he had a gun and a bomb, and based upon his gesture to the [s]tyrofoam box when he passed the note to the teller and verbally told her that he had a bomb as well as a gun, the Court finds that the [s]tyrofoam box carried into the bank by the defendant appeared to be a dangerous weapon for purposes of the enhancement. Therefore, the provisions of § 2B3.1(b)(2)(E) do apply; the 3-point enhancement the defendant received is supported by the evidence in this record; and the defendant's objection in this regard is DENIED.

Rodriguez was sentenced to 95 months in prison followed by 4 years of supervised release. This timely appeal followed.

## II. ANALYSIS

Rodriguez challenges the district court's determination that he possessed what appeared to be a dangerous weapon while robbing the bank, a finding that led to the enhancement of his sentence pursuant to United States Sentencing Guidelines § 2B3.1(b)(2)(E). We will set this finding aside only if we conclude that it is clearly erroneous. *United States v. Woodard*, 24 F.3d 872, 874 (6th Cir. 1994) (recognizing that the district court's determination that an object appeared to be a dangerous weapon for the purpose of § 2B3.1(b)(2)(E) is a factual finding subject to the clearly erroneous standard of review). A factual finding is clearly erroneous where, although there is evidence to support that finding, "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).

This court applies an objective standard in determining whether an object may be considered a dangerous weapon for the purpose of § 2B3.1(b)(2)(E). *Woodard*, 24 F.3d at 874

(employing an objective standard in upholding a § 2B3.1(b)(2)(E) enhancement where the defendant used a realistic-looking toy gun during a robbery). The ultimate inquiry is whether a reasonable individual would believe that the object is a dangerous weapon under the circumstances. *United States v. Hart*, 226 F.3d 602, 607 (7th Cir. 2000) ("We believe that the relevant question is whether a reasonable person, under the circumstances of the robbery, would have regarded the object that the defendant brandished, displayed or possessed as a dangerous weapon, capable of inflicting death or serious bodily injury.") (internal quotation marks omitted); *see also* U.S. Sentencing Guidelines Manual § 2B3.1, application note 2 (2000) (amending the prior version of the application note to make clear that an object shall be considered a dangerous weapon if the defendant created the impression that the object was capable of inflicting death or serious bodily injury, such as where "a defendant wrapped a hand in a towel during a bank robbery to create the appearance of a gun").

Applying this standard to the present case, the district court found that the styrofoam sandwich box that Rodriguez brought with him into the Bank of Tennessee branch could have been reasonably regarded as a dangerous weapon; namely, a bomb. Rodriguez maintains that this finding is clearly erroneous because the box neither had wires protruding out of it nor made any noise.

But Rodriguez was a convincing actor. Before commencing the robbery, he entered the bank carrying the small styrofoam box in both of his hands. He set the box down on a writing table in the lobby and approached Street. Rodriguez eventually told Street that he had a bomb, motioning toward the box as he did so. Because the box was opaque, Street could not see that it contained only a sandwich rather than an explosive device. Under these circumstances, we find that a bank teller in Street's position would have a reasonable basis to believe that the box contained a bomb. Rodriguez's disingenuous claim that, despite his best efforts to convince