UNITED STATES of America

v.

Robert ROWSEY.

No. 3:05 CR 142–001.

United States District Court,
N.D. Indiana,
South Bend Division.

May 12, 2006.

Donald J. Schmid, U.S. Attorney's Office, South Bend, IN, for United States of America.

Andre B. Gammage, Berger & Gammage Law Offices, South Bend, IN, for Robert Rowsey.

## SENTENCING MEMORANDUM

ALLEN SHARP, District Judge.

### I. Procedural History

The Defendant, **ROBERT ROWSEY**, was charged in Count One (1) of a 1–count Information filed by the U.S. Attorney's Office for the Northern District of Indiana on December 2, 2005. The Defendant pleaded guilty to Count 1 of the Information on December 5, 2005. At this hearing, the Defendant also waived his right to have this felony charge presented to a Grand Jury and consented to the filing of this charge by way of an Information. Count 1 charges the Defendant with a violation of 18 U.S.C. § 2113(a) and (d), Armed Bank Robbery.

Because the offense occurred after November 1, 1987, the Sentencing Reform Act of 1984 and the United States Sentencing Commission Guidelines (Guidelines), as amended November 1, 2005, apply to this sentencing, pursuant to *Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987). However, because the offense conduct took place before November 1, 2005, the effective date for the current Guidelines, the Court has made the required comparison and determined that no difference exists between the two Guidelines for the purpose of this sentence. Therefore, the current edition of the Guidelines is employed. This Court does not conceive that the Supreme Court decision in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), as interpreted by the Seventh Circuit in *United States v. Booker*, 543 U.S. 220, 225, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005),[1] in any way undermines the sentencing in this case. To the extent that any portion of the Guidelines being used have been excised, this Court is convinced that, based on its own discretion, this is the appropriate sentence in this case.[2] This Court also notes that the decision in *McReynolds, et. al v. United States*, 397 F.3d 479, 480 (7th Cir.2005) resolves any questions regarding the retroactive application of *Booker* and Blakely.

### II. The Presentence Report

The Defendant, defense counsel, and the government have reviewed the presentence report, as has the court. The government has no objections. The Defendant objects to paragraphs 10, 21, and 22 of the presentence report as they relate to enhancements for brandishing/possessing a dangerous weapon and victim restraint.[3]

---

1. Under *Booker*, a defendant has the right to have a jury decide factual issues that will increase her sentence, unless admitted by the defendant. *United States v. Booker*, 543 U.S. 220, 225, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

2. Under *Booker*, 18 U.S.C.A. § 3553(b)(1), which makes Federal Sentencing Guidelines mandatory, and 18 U.S.C.A. § 3742(e), which relies on the Guidelines' mandatory nature and provides for de novo review on appeal of departures, are severed and excised. *United States v. Booker*, 543 U.S. 220, 225, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

3. The presentence report and the attachments to it state that the Defendant objects to paragraphs 21 and 22 as they relate to enhancements for brandishing/possessing a dangerous

These objections will be addressed in Section IV below. All other paragraphs of the presentence report not specifically addressed in this Memorandum are adopted by the Court as findings of fact and statements of reason for imposition of sentence in this case. The Court specifically adopts paragraphs four (4) through ten (10) describing the offense conduct as the factual basis for this sentence.

### III. The Plea Agreement

The Defendant and the government have entered into a plea agreement in which the Defendant agreed to plead guilty to Count 1 of the Information. The Defendant understands the maximum possible penalties for this offense and that he will be sentenced pursuant to the Sentencing Guidelines. With this understanding, the Defendant has agreed to waive his right to appeal this sentence on any ground and has agreed that he will not contest this sentence or the manner in which it was determined in any post conviction proceedings. The Defendant agreed not to contest any restitution order imposed. The Defendant acknowledges that there are no grounds for downward sentencing departure and agrees not to seek any such departures at the time of sentencing. The Defendant also agrees not to seek a sentencing outside the applicable guideline range at the time of sentencing.

The government has made a non-binding recommendation to the Court that the Defendant be given the maximum reduction in offense level for acceptance of responsibility and a non-binding recommendation that any sentence imposed be no higher

than the mid-point of the applicable guideline range.

### IV. The Defendant's Offense Level

The Guideline for a violation of 18 U.S.C. § 2113(a) and (d) is found in U.S.S.G. § 2B3.1(a). This Defendant's criminal activity was Armed Bank Robbery, which calls for a base offense level of twenty (20). Two (2) levels are added, pursuant to U.S.S.G. § 2B3.1(b)(2) because the money taken was the property of a financial institution. This gives the Defendant an adjusted offense level of twenty-two (22).

■ The presentence report recommends a three (3) level increase for brandishing/possessing a dangerous weapon, pursuant to U.S.S.G. § 2B3.1(b)(2)(E). The Defendant objects to this increase, arguing:

> The item possessed by the Defendant was clearly plugged at the end of the barrel. It was obvious to all in the bank that the item could not be fired. The brandishing of the item was not a dangerous weapon nor could it be perceived to be a dangerous weapon.

Defendant's Supplemental Response.

The government responded by stating that the "gun possessed by the defendant was a very realistic replica gun. That replica gun was designed to and did look very much like a real functioning firearm." Government's Response to Defense Objections ("Government's Response") at 1. The government quoted U.S.S.G. § 1B1.1, Application Note 1(D) as defining dangerous weapons as including "an object that is not an instrument capable of inflicting death

---

weapon and victim restraint. However, paragraph 21 sets the base offense level for this offense conduct and paragraph 22 discusses an enhancement because the property of a financial institution was taken during the robbery. As such, this Court will consider the

Defendant's objections as applying to paragraphs 23 and 24 of the presentence report, as those are the paragraphs which deal with brandishing/possessing a dangerous weapon and victim impact, respectively.

or serious bodily injury but (i) closely resembles such an instrument." The government went to state that, included in the definition of "dangerous weapons" are those used by the defendant "in a manner that created the impression that the object was such an instrument [capable of inflicting death or serious bodily injury] (e.g. a defendant wrapped a hand in a towel during a bank robbery to create the appearance of a gun)." Government's Response at 1.; *quoting* U.S.S.G. § 1B1.1, Application Note 1(D). Since the Defendant brandished the replica gun as if it were a real firearm, the government contends that the enhancement for use of a dangerous weapon applies.

This Court began by consulting the consulting the sentencing guidelines and relevant case law on this issue. Guideline § 2B3.1(b)(2)(E) states that the district court should increase the base offense level if a "dangerous weapon was brandished, displayed, or possessed" by the defendant in the course of a robbery. U.S.S.G. § 1B1.1, Commentary, Application Note 1(d) defines "dangerous weapon" as "an instrument capable of inflicting death or serious bodily injury. Where an object that appeared to be a dangerous weapon was brandished, displayed, or possessed, treat the object as a dangerous weapon." A "dangerous weapon" is "brandished" when it is "pointed or waived about or displayed in a threatening manner." U.S.S.G. § 1B1.1, comment. (n. 1(c) & (d)). *See also United States v. Hart,* 226 F.3d 602, 605 (7th Cir.2000).

The Seventh Circuit stated, "[a]lthough § 2B3.1(b)(2)(E), on its face, refers only to weapons that are dangerous, the commentary in application note 2 directs sentencing courts to impose the three-level enhancement whenever a harmless object that 'appeared to be a dangerous weapon'

was brandished, displayed or possessed by the defendant." *Hart,* 226 F.3d at 605 (citing U.S.S.G. § 2B3.1(b)(2)(E), comment. (n. 2)). *See also United States v. Buckley,* 192 F.3d 708, 709 (7th Cir.1999), *cert. denied,* 529 U.S. 1137, 120 S.Ct. 2021, 146 L.Ed.2d 969 (2000).[4] The rationale behind this rule is that there is a risk that a violent response might result from brandishing, displaying, or possessing a dangerous weapon during the commission of a robbery. This danger is "just as real whether the object used by the defendant to create the illusion of the dangerous weapon." *Hart,* 226 F.3d at 605 (citing *United States v. Souther,* 221 F.3d 626, 630–31 (4th Cir.2000); *United States v. Bates,* 213 F.3d 1336, 1338 (11th Cir.2000); *United States v. Woodard,* 24 F.3d 872, 874(6 th Cir.1994); *United States v. Dixon,* 982 F.2d 116, 123–24 (3d Cir.1992)).

In *Hart,* the Court held that the standard to determine whether a particular object appeared to be a dangerous weapon within the meaning of U.S.S.G. § 2B 3.1(b)(2)(E) is "whether a reasonable person, under the circumstances of the robbery, would have regarded the object that the defendant brandished, displayed or possessed as a dangerous weapon, 'capable of inflicting death or serious bodily injury.'" 226 F.3d at 607 (quoting U.S.S.G. § 1B1.1, comment. (n. 1(d))). The Court stated that the victims perception of the object is relevant, though his or her state of mind is never controlling of the outcome. *Id.* Here, the Defendant contends that the requirement for the dangerous weapon enhancement cannot be satisfied by possessing an item that was plugged at the end of the barrel.

In *United States v. Robinson,* the defendant argued that the sentencing court erred in applying a three level enhance-

---

**4.** In *United States v. Koonce,* 991 F.2d 693, 697 (11th Cir.1993), the Court held that "[I]n-

sofar as dangerous weapons are concerned, appearances count as well as reality."

ment, pursuant to U.S.S.G. § 2B3.1(b)(2)(E), for possession of a "dangerous weapon" due to the fact that she actually possessed a toy gun. 20 F.3d 270, 277 (7th Cir.1994). There, the Seventh Circuit held that, "under the sentencing guidelines, it is enough that defendant 'possessed' a gun." [5] *Robinson*, 20 F.3d at 277. Additionally, in a footnote in *United States v. White*, the Seventh Circuit stated that the "fact that White used a fake bomb during the commission of the robbery is irrelevant for imposition of this enhancement because Application Note 1(d) further provides that '[w]here an object that appeared to be a dangerous weapon was brandished, displayed, or possessed, treat the object as a dangerous weapon.'" 222 F.3d 363, 374 (7th Cir.2000).

Here, in paragraph 9(b) of his Plea Agreement, the Defendant stated:

I admit that I robbed *[sic]* branch of Key Bank located at 1320 Middlebury St. in Elkhart, Indiana on September 14, 2005. To commit the bank robbery, I forced a bank employee (Jodie Russell) into the bank around 8:00 a.m. I was wearing a ski mask at the time. I used and brandished a realistic replica of a handgun during the robbery. I told the bank employee to give me money.

Plea Agreement at Paragraph 9(b).

■ This Court finds that the object brandished or displayed by this Defendant could have appeared to be a dangerous weapon within the meaning of the guidelines. There is no reason why this Defendant, who brandished an object which reasonably appeared to be, but was not in fact, a dangerous weapon, should not re-

ceive the three level enhancement contemplated by the guidelines. The "appearance of dangerousness is determined by viewing the object, not in isolation, but in the context of the offense." By his own admission, the Defendant "brandished a realistic replica of a handgun during the robbery." Plea Agreement at Paragraph 9(b). This Court finds that the handgun replica possessed by the Defendant during the course of the armed bank robbery is appropriately described as a "dangerous weapon." As such, the application of U.S.S.G. § 2B3.1(b)(2)(E) is appropriate, and the three (3) level increase recommended in the presentence report applies. This gives the Defendant an adjusted offense level of twenty-five (25).

■ The presentence report also recommends a two level increase, pursuant to U.S.S.G. § 2B3.1(b)(4)(B), for victim restraint. The Defendant objects to this increase, stating that "the restraint of the victim was for a duration of about two minutes." Defendant's Supplemental Response. The Defendant went on to argue that "[w]hile 2B3.1(b)(4)(B) does not contemplate that the length of a victim's detention is a factor, in determining applicability, U.S.S.G. § 2A4.1(b)(4)(C), regarding kidnapping does make duration of the detention an issue." *Id.* Finally, the Defendant argues that because the Defendant "also caused the release of the victim," 2B3.1(b)(4)(B) is inapplicable. *Id.*

The government responded by first pointing out that the Defendant conceded that he "physically restrained a bank employee during the robbery with flex-cuffs." Government's Response at 1. The govern-

---

**5.** The *Robinson* court referenced several other cases in which possession of a gun is sufficient for the imposition of this enhancement: *See, e.g., United States v. Koonce*, 991 F.2d 693 (11th Cir.1993) (where BB gun looks like a real firearm and is perceived by robbery victims to be a real firearm, enhancement for possession of a "dangerous weapon," but not of a "firearm," is appropriate); *United States v. Dixon*, 982 F.2d 116, 122 (3d Cir.1992) (brandishing/possessing applied where defendant menacingly pointed a towel-covered hand that employees perceived to be a gun).

ment quoted U.S.S.G. § 1B1.1, Application Note 1(K), which defines "physically restrained" as the "forcible restraint of a victim such as being tied, bound, or locked up." The government argues that there is nothing in that guideline section that requires the victim be restrained for a specific period of time and stated, "there is nothing in the definition or in Section 2B3.1(b)(4)(B) that indicates that the enhancement is not applicable if the defendant released the defendant *[sic]* from restraints prior to the conclusion of the bank robbery." Government's Response at 1–2. Finally, the Defendant asserted that the application of U.S.S.G. § 2A4.1(b)(4) is inappropriate because "[t]hat kidnapping situation is not analogous to the physical restraint of a bank employee during a bank robbery." *Id.* at 2.

Guideline § 2B3.1(b)(4)(B) mandates a two-level increase in offense level "if any person was physically restrained to facilitate commission of the offense or to facilitate escape ..." U.S.S.G. § 1B1.1, Commentary, Application Note 1(i) defines "physically restrained" as "the forcible restraint of the victim such as by being tied, bound, or locked up." [6] The commentary to U.S.S.G. § 2B3.1 states that this enhancement applies "for robberies where a victim was forced to accompany the defendant to another location, or was physically restrained by being tied, bound, or locked up."

In *United States v. Tholl*, the Court stated that when "the Guidelines are viewed in their totality, it becomes clear that the 'physical restraint' enhancement ... had a very obvious purpose: the drafters of the guidelines intended that any offender who physically restrains his victim should receive a two-level offense increase over offenders who commit the same offense but do not restrain their victims." 895 F.2d 1178, 1184 (7th Cir. 1990), *as amended* Feb. 21, 1990.

*United States v. Doubet,* 969 F.2d 341, 346 (7th Cir.1992), affirmed the "physically restrained" enhancement where the defendant-bank robber did not bind or in any way touch the tellers, but where they were "ordered to enter an unlocked restroom which was near an unlocked, unguarded exit." In Doubet, the Court rejected the defendant's argument that the tellers "could have left." *Id.* The Court reiterated the Guidelines' purpose as to punish criminals who use such restraint to "facilitate the commission of the offense." *Id.* (citing U.S.S.G. § 2B3.1(b)(4)(B)).

Further, in *Robinson,* the sentencing court increased the offense level "on the basis that spraying mace during two of the robberies caused the tellers to be 'physically restrained ... to facilitate [the robber's] escape.'" 20 F.3d at 279. The Seventh Circuit affirmed this application, stating that "the district court's factual findings regarding the tellers' sense of being injured, paralyzed or restrained by the mace resulted in the court's proper application of the guideline in question." *Id.*

Here, the Court consulted the Defendant's sworn statements in his Plea Agreement. The Defendant stated:

During the course of the robbery, I used plastic flex cuffs to restrain Ms. Russell. Several other female employees of the bank arrived and entered the branch

---

**6.** The "physical restraint" requirement is not to be applied if one of three exceptions listed in Application Note 2 to section 3A1.3 is met. U.S.S.G. § 3A1.3 states, "[i]f the victim of a crime was physically restrained in the course of the offense, increase by 2 levels." Application Note 2 to that section states, "[t]his ad-

justment applies to any offense in which the victim was physically restrained in the course of the offense, except where such restraint is an element of the offense, specifically incorporated into the base offense level, or listed as a specific offense characteristic."

during the robbery; I kept them in a place where I could keep an eye on them. I filled a bag with cash and then fled the bank. I was able to get away from the bank with $23,512.00.

Plea Agreement at Paragraph 9(b).

This Court finds that, in hand cuffing a bank employee, the Defendant did restrain a victim. It is the fact of restraint—not the duration thereof—that is controlling. As such, the two (2) level enhancement, pursuant to U.S.S.G. § 2B3.1(b)(4)(B), is appropriate. This increased the Defendant's offense level to twenty-seven (27).

Finally, one level is added, pursuant to U.S.S.G. § 2B3.1(b)(7)(B), because the loss amount in this case was $23,512.00. This gives the Defendant an adjusted offense level of twenty-eight (28).

The government recommended the maximum reduction under Guideline U.S.S.G. § 3E1.1(a) and (b), for acceptance of responsibility. The Court finds that a three (3) level reduction for acceptance of responsibility is warranted, giving the Defendant an adjusted offense level of twenty-five (25).

The Defendant has a subtotal of six (6) criminal history points; two for a conviction in 1995 for Battery (Class A Misdemeanor), pursuant to U.S.S.G. § 4A1.1(b); one for a conviction in 1997 for Check Deception (Class A Misdemeanor), pursuant to U.S.S.G. §§ 4A1.2(f) and 4A1.1(c); and three for a conviction in 2000 for Bank Robbery, pursuant to U.S.S.G. § 4A1.1(a). Pursuant to U.S.S.G. § 4A1.2, the Bank Robbery conviction qualifies as a crime of violence.

Two (2) points are added, pursuant to U.S. S.G. § 4A 1.1(d), because at the time of this offense, the Defendant was on federal supervised release commencing on October 18, 2004, in cause number 3:00CR00015–001. Additionally, because the instant offense was committed less than two years following the Defendant's release from custody on October 18, 2004 for the sentence of sixty-three (63) months (cause number 3:00CR00015–001), one (1) point is added, pursuant to U.S.S.G. § 4A1.1(e). This gives the Defendant an adjusted criminal history point total of nine (9). Nine criminal history points places the Defendant in criminal history category IV.

### V. The Defendant's Sentence

■ With a total offense level of 25 and a criminal history of IV, the applicable Guideline range for imprisonment is eighty-four (84)—one hundred-five (105) months. The sentence for this offense may be imposed to run concurrently, partially concurrently, or consecutively to any prior undischarged term of imprisonment. The Defendant is not eligible for probation because this offense is a class B felony, pursuant to 18 U.S.C. § 3561(a)(1), and because the applicable guideline range is in Zone D of the Sentencing Table. The guideline range for supervised release is three (3) to five (5) years, pursuant to U.S.S.G. § 5D1.2(a)(2). The applicable fine range under U.S.S.G. § 5E1.2(c)(3) is from $10,000 to $100,000.

The government has recommended a sentence at no higher than the mid-point of the applicable guideline range. This Court has considered the record as a whole, and in particular the Defendant's age, criminal history, risk of recidivism, and need to protect society. This Court is particularly troubled by the Defendant's repeat Bank Robbery offenses. On December 21, 2000, the Defendant was sentenced to sixty-three (63) months imprisonment for Armed Bank Robbery in Cause # 3:00CR00015–001. On October 18, 2004, the Defendant was discharged from imprisonment to commence the three year term of supervised release imposed as a condition of his sentence in that case. The Defendant then proceeded to commit an-

other Armed Bank Robbery offense on September 14, 2005, while on supervised release and that less than one (1) year into the three (3) year term of supervised release imposed. Moreover, the Defendant brandished a replica of a handgun, which was perceived to be a dangerous weapon, and restrained a victim in handcuffs during the commission of this offense. The bank teller involved in the robbery provided this Court with a statement describing the impact this armed bank robbery has had on her family and herself. This Court has reviewed this statement.

Given the apparent lack of ability to conform himself to the law and standards of society and due to the great danger the Defendant faces to the community, this Court finds that the government's recommendation is appropriate. The Defendant is sentenced to a term of ninety-four (94) months imprisonment, to run concurrent to any prior undischarged term of imprisonment. This sentence is to be followed by three (3) years of supervised release. The conditions of supervised release shall include the fifteen (15) standard conditions as listed under U.S.S.G. § 5D1.3(c), as well as the additional conditions listed on pages 18–19 of the presentence report.

This sentence is to commence immediately. The Defendant shall receive jail credit time for time served since her incarceration on this offense, as calculated by the Bureau of Prisons. The Court finds that this sentence sufficiently punishes this Defendant for his criminal conduct and therefore satisfies the purposes of sentencing as set forth in 18 U.S.C. § 3553(a).

## VI. Fines, Restitution, Fees

Based on this Defendant's financial information, the Court imposes no fine. The Court must and does assess a special assessment fee of $100.00 on each count, for a total special assessment of $100.00.

▓▓▓ Restitution is mandatory in this case under 18 U.S.C. § 3663, which requires the Court to order restitution without consideration of the Defendant's economic circumstances. *Id.* The Mandatory Victims Restitution Act makes "restitution mandatory for certain crimes ... [whereas] the previous statute gave courts discretion and required consideration of the financial resources of the defendant." *United States v. Baldwin,* 414 F.3d 791 (7th Cir.2005). Restitution is an equitable device used to restore victims to their condition prior to when the crime took place rather than a criminal sanction. *Id.* The court can order restitution be paid as a condition of supervised release, meaning that the defendant does not have to pay it until he is released from prison. *United States v. Cook,* 406 F.3d 485 (7th Cir.2005). This Court can also order the restitution to be paid in full immediately upon sentencing. The Court may, however, consider the financial resources of the Defendant with respect to the method and schedule of payment. *United States v. Day,* 418 F.3d 746, 759 (7th Cir.2005). *See also* 18 U.S.C. § 3664(f)(2). In *Day,* the Seventh Circuit stated, " 'immediate payment' does not mean 'immediate payment in full;' rather it means 'payment to the extent that the defendant can make it in good faith, beginning immediately.' " 418 F.3d at 759.

Therefore, the Court orders the Defendant to pay restitution in the amount of $258.00, due immediately[7]. The United States and the victims named may enforce this judgment for the full amount due as provided by law. Payments must be forwarded to the United States District Court Clerk's Office at 204 South Main Street,

---

7. This sum is to reimburse the victim bank teller for mental health counseling services incurred as a result of this offense.

South Bend, Indiana, 46601, for disbursement to the identified victim.

If the full amount due as restitution remains unpaid, the following payment schedules shall be effectuated. While incarcerated, the Defendant must pay, through the Bureau of Prisons Inmate Financial Responsibility Program, $25.00 per quarter, or no less than 50% of the funds available to the Defendant per quarter, whichever sum is greater. If, after considering the Defendant's specific obligations and resources, the Unit Manager determines that more or less should be due, the Bureau of Prisons may require the Defendant to pay at least such amount, with notice to the Defendant, the United States Attorney, and the Court, subject to *de novo* review by this Court.

While on supervised release, the Defendant shall pay at least $150 per month, starting sixty (60) days after release from the Bureau of Prisons. If, after considering the Defendant's economic circumstances and responsibilities, the United States Probation Officer determines that more or less should be due on a monthly basis, the United States Probation Officer may require the Defendant to pay at least such amount, with notice to the Defendant, the United States Attorney, and the Court, subject to *de novo* review by this Court.

Finally, not later than thirty (30) days after any change occurs, the Defendant shall notify the United States Attorney and this Court of any material change in economic circumstances that might affect the Defendant's ability to pay restitution, and any change in mailing or residence address.

The clerk shall prepare judgment. The clerk shall also provide a copy of this Sentencing Memorandum to the United States Probation Department for forwarding to the United States Sentencing Commission.

IT IS SO ORDERED.